**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nolan Gorney, | No. CV-23-01413-PHX-SHD |
| Plaintiff, | **ORDER** |
| v. | |
| Safeway Incorporated, et al., | |
| Defendants. | |

Pending before the Court is Defendant Safeway Inc.'s ("Safeway") motion to exclude the opinions of Plaintiff Nolan Gorney's expert, Dr. Michael Steingart. (Doc. 32.) For the following reasons, Safeway's motion is **denied**.

## I.    RELEVANT BACKGROUND

This case arises out of an accident in which Gorney slipped and fell at a Safeway store. Gorney designated Dr. Steingart, an orthopedic surgeon, as an expert. (*See* Doc. 56 at 5.) Dr. Steingart conducted an independent medical examination and opined that the accident aggravated Gorney's preexisting condition. (*See* Doc. 32-1 at 31, 34.) Dr. Steingart also stated that Gorney's "vascular status had changed from this fall and in all medical probability caused progression of his clot or for the need of treatment." (*Id.* at 34.)

Safeway designated two experts: Dr. Michael Domer, an orthopedic surgeon, and Dr. David Feuer, a vascular surgeon. (*See* Doc. 56 at 5–6; Doc. 32-1 at 46.) Dr. Domer also conducted an independent medical examination and opined that "there is no evidence to support any change to [Gorney's] vascular status" and that, although the "most likely

accident-related diagnosis would be myofascial strains to the back," Gorney had not sustained any permanent impairments and would not require further treatment "for the full resolution of any accident-related complaints from an orthopedic perspective." (Doc. 32-1 at 51–52.)  Dr. Feuer opined that, although Gorney had a "longstanding preexisting history of" certain vascular issues, "one would be hard pressed to conclude that the recurrent venous ulcer that [he] developed in the weeks following his fall was in any way related to any of the injuries he may have sustained as a result of that fall." (*Id.* at 62.)  Dr. Feuer issued an addendum to his report after receiving additional medical records and reached similar conclusions.  (*See id.* at 81, 84–85.)

Dr. Steingart issued rebuttal reports to Dr. Domer's and Dr. Feuer's reports.  In his rebuttal to Dr. Domer's report, Dr. Steingart stated that he could opine on wound management issues—including issues pertaining to the ulcer Gorney developed after his accident—because he had experience treating open wounds in his career, as orthopedic surgeons did so "before there were wound management specialists." (*See id.* at 75–76.)  In his rebuttal to Dr. Feuer's report, Dr. Steingart stated that he "treated vascular ulcers and skin contaminated wounds, deep and superficial venous thrombosis, amputations, and limb swelling" in his career.  (*Id.* at 87.)  He opined that Gorney's preexisting "vascular condition and lower back issue" was "made worse" because of the trauma he sustained from the accident and the setting in which the accident occurred.  (*See id.* at 89.)

Safeway moved to exclude Dr. Steingart's opinions.  (Doc. 32.)  This motion was fully briefed.  (*See* Docs. 33, 35.)

The Court held oral argument on Safeway's motion at the August 26, 2025 Final Pretrial Conference.  (*See* Doc. 55.)  In advance of the hearing, the Court requested supplemental briefing from the parties on the effect of the Ninth Circuit's recent decision in *Engilis v. Monsanto Co.*, ___ F.4th ____, 2025 WL 2315898 (9th Cir. 2025).  (*See* Doc. 49.)  The parties submitted the requested briefing, (*see* Docs. 51, 52), and in Gorney's brief, he requested a trial continuance and limited discovery to designate Gorney's treating physician as an expert if the Court granted Safeway's motion, (Doc. 52 at 5).

1    At a later hearing, the Court informed the parties that it would deny Safeway's
2    motion and that this order would follow.  (*See* Doc. 57.)

3    ## II.    LEGAL STANDARD

4    Under Rule 702, a "witness who is qualified as an expert . . . may testify in the form
5    of an opinion or otherwise if the proponent demonstrates to the court that it is more likely
6    than not that" (1) the expert's "specialized knowledge will help the trier of fact to
7    understand the evidence or to determine a fact in issue," (2) "the testimony is based on
8    sufficient facts or data," (3) "the testimony is the product of reliable principles and
9    methods," and (4) "the expert's opinion reflects a reliable application of the principles and
10    methods to the facts of the case."  Fed. R. Evid. 702.  The proponent must "establish the
11    admissibility criteria . . . by a preponderance of the evidence," and there is "no presumption
12    in favor of admission."  *Engilis v. Monsanto Co.*, ___ F.4th ____, 2025 WL 2315898, at
13    *6 (9th Cir. 2025).  These "exacting" requirements, *see Weisgram v. Marley Co.*, 528 U.S.
14    440, 455 (2000), are imposed in part because "an expert is permitted wide latitude to offer
15    opinions, including those that are not based on firsthand knowledge or observation," unlike
16    ordinary witnesses.  *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993);
17    *see also* Fed. R. Evid. 703 (allowing an expert to rely on inadmissible facts or data if
18    "experts in the particular field would reasonably rely on" them).  As Rule 702 indicates,
19    whether an expert's testimony meets these requirements and is admissible is determined
20    by a court, not by a jury.  *See* Fed. R. Evid. 702; *Daubert*, 509 U.S. at 592–93.  Moreover,
21    "challenges to an expert's opinion go to the weight of the evidence only if a court first finds
22    it more likely than not that an expert has a sufficient basis to support an opinion."  *Engilis*,
23    ___ F.4th ____, 2025 WL 2315898, at *5.

24    A court's Rule 702 "inquiry . . . [is] a flexible one," but the focus is on "the
25    evidentiary relevance and reliability—of the principles that underlie a proposed
26    submission," not on the "conclusions that they generate."  *Daubert*, 509 U.S. at 594–95;
27    *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999) (holding *Daubert*'s
28    "general principles apply to [all] expert matters described in Rule 702").  In this manner,

1  courts are the "gatekeeper, not [the] fact finder." *Elosu v. Middlefork Ranch Inc.*, 26 F.4th
2  1017, 1020 (9th Cir. 2022) (citation omitted).  Courts may not "select between competing
3  versions of the evidence, . . . determine the veracity of the expert's conclusions at the
4  admissibility stage," or "evaluate whether [the opinion] is corroborated by other evidence
5  on the record." *Id.* at 1026.

6  ### III.    DISCUSSION

7  Safeway argues that Dr. Steingart's expert opinions must be excluded because (1) he
8  did not review all of Gorney's relevant medical records, so his opinions are not based on
9  sufficient facts and data or a reliable methodology, (Doc. 32 at 5–8),[1] and (2) as an
10 orthopedic surgeon, he is not qualified to rebut Dr. Feuer's expert opinions on Gorney's
11 vascular status, (*id.* at 8–11).

12 The "subject of an expert's testimony" must be based on "more than subjective
13 belief or unsupported speculation," but instead on "any body of known facts or . . . any
14 body of ideas inferred from such facts or accepted as truths on good grounds." *Daubert*,
15 509 U.S. at 589–90 (citation omitted).  Such knowledge can include "observations based
16 on extensive and specialized experience." *Kumho*, 526 U.S. at 156; *see also Engilis*, ___
17 F.4th ____, 2025 WL 2315898, at *9 ("[K]nowledge and experience can . . . serve as the
18 requisite facts or data on which [the expert] render[s] an opinion." (quotation marks
19 omitted)).  Medical knowledge in particular "is often uncertain due to the complexity of
20 the human body and the novelty of emerging medical issues," so physicians "must use their
21 knowledge and experience as a basis for weighing known factors along with the inevitable
22 uncertainties to make a sound judgment in each case." *Engilis*, ___ F.4th ____, 2025 WL
23 2315898, at *9 (quotation marks omitted).  Although the expert's specialized knowledge
24 need not be certain, the testimony must nevertheless be "supported by appropriate
25 validation—*i.e.*, 'good grounds,' based on what is known." *Daubert*, 509 U.S. at 590
26 (citation omitted).  In other words, an opinion that is "connected to existing data only by

27
28
[1]    Although Safeway makes separate arguments under both Rule 702(b) and (c), they are analyzed together for overall reliability because both are premised on Dr. Steingart's failure to review all of the relevant medical records.  (*See* Doc. 32 at 5–8.)

the *ipse dixit* of the expert" need not be admitted. *See Kumho*, 526 U.S. at 157 (citation omitted). But if the opinion "is based on an assertion that is grounded in methods of science," it is reliable. *See Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 841 (9th Cir. 2001).

Accordingly, if Dr. Steingart's failure to personally examine all of Gorney's relevant medical records renders his opinions not "supported by appropriate validation" or based on "subjective belief or unsupported speculation," his opinions are not reliable and must be excluded. *See Daubert*, 509 U.S. at 589–90. Similarly, if Dr. Steingart does not have sufficient knowledge or experience that would allow him to opine on areas touching on vascular issues, such opinions would also be unreliable. *See Kumho*, 526 U.S. at 156; *Daubert*, 509 U.S. at 590.

Gorney has met his burden of establishing by a preponderance of the evidence that Dr. Steingart's challenged opinions are sufficiently reliable to meet the requirements of Rule 702, so Dr. Steingart's opinions are admissible. The Court takes each of Safeway's challenges in turn.

### 1.    Failure to Examine All Relevant Medical Records

Dr. Steingart based his opinion on a review of Gorney's medical records—one set of records contained 600 pages, (*see* Doc. 32-1 at 32)—his examination of Gorney, and Gorney's oral medical history. (*Id.* at 31–34.) This universe of facts and data was sufficient for Dr. Steingart to reach his medical conclusions and provided "good grounds" for his opinion to be reliable. *See Daubert*, 509 U.S. at 590; *Carroll v. Morgan*, 17 F.3d 787, 790 (5th Cir. 1994) (holding opinion was reliable where it was "based on thirty years of experience as a practicing, board-certified cardiologist, on his review . . . of [the] medical records . . . , and on a broad spectrum of published materials," reasoning that such an opinion was "grounded in the methods and procedures of science and was not mere unsupported speculation" (citation modified)); *O'Brien v. NCL (Bahamas) Ltd.*, 2017 WL 10410455, at *4 (S.D. Fla. 2017) (finding that expert's opinion "applying his nearly forty years of experience in internal medicine and infectious diseases to Plaintiff's medical

1    records and Plaintiff's deposition testimony" was reliable); *Crowder v. Fuddruckers, Inc.*,
2    2006 WL 8449984, at *3 (D.D.C. 2006) (stating that an expert's opinions based on a
3    medical examination, a plaintiff's self-reported history of treatment, and "those of other
4    medical doctors," were based on "the type of data reasonably relied upon by medical
5    experts in formulating opinions").

6        Safeway argues that, for his opinions to be reliable, Dr. Steingart was required to
7    review the medical records from IYA Medical, LLC and from Gorney's primary care
8    physician, in addition to the records he already reviewed from Arizona Pain Doctors,
9    Chandler Regional Medical Center, Arizona General Hospital, and MRI scans from
10   SimonMed, (*see* Doc. 32-1 at 32–34).  (Doc. 32 at 2–3.)  Dr. Steingart was not required to
11   do so.  *See Gout v. 24HR Homecare LLC*, 2023 WL 6127669, at *2 (D. Ariz. 2023)
12   ("Defendants fault Dr. Wallis for not reviewing specific medical records . . . .  These
13   arguments go to the weight, not the admissibility, of Dr. Wallis' opinion."); *In re Toyota
14   Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prods. Liab. Litig.*, 978 F.
15   Supp. 2d 1053, 1073 (C.D. Cal. 2013) (finding that there was a "sufficient factual basis"
16   for the expert's opinion, so "challenges regarding all of the materials that [the expert] did
17   not review go to weight, not admissibility"); *Crowder*, 2006 WL 8449984, at *3 ("There
18   is no requirement that an expert must review all . . . medical records before proffering his
19   opinion and testimony."); *see also Walsh v. Reliance Tr. Co.*, 2023 WL 1966921, at *10
20   (D. Ariz. 2023) ("The [Rule 702(b)] requirement contemplates there will be a sufficient
21   foundation for an opinion, not necessarily that there will be sufficient corroboration of that
22   opinion in all portions of the record." (quotation marks omitted)); *Rodriguez v. SeaBreeze
23   Jetlev LLC*, 2022 WL 3639305, at *9 (N.D. Cal. 2022) ("There is no rule that an expert
24   must consider and discuss all of the evidence on the record in order to proffer expert
25   testimony." (citation omitted)).

26        It is worth noting that Safeway's expert Dr. Feuer stated in his report that Gorney's
27   "history of left leg venous issues date[d] back . . . to at least 2002," but "[u]nfortunately,
28   the records provided [to him] only date[d] back to June of 2014."  (Doc. 32-1 at 61.)  That

Safeway's expert seemingly engaged in the same failure to review all relevant medical records undercuts its argument that Dr. Steingart's failure to do so necessarily renders his opinions unreliable.  Gorney did not move to exclude Dr. Feuer, so admissibility of his opinions is not at issue, but the similar practices employed by both experts confirms that Dr. Steingart's failure to review all relevant medical records does not render his opinions *per se* unreliable.  Rule 702 requires only that Dr. Steingart's opinions be based on "sufficient"—not exhaustive—"facts and data."  Fed. R. Evid. 702(b); *see also Wright v. HireRight LLC*, 2025 WL 928852, at *4 (D. Ariz. 2025) ("[T]here is no requirement that an expert review all potentially relevant material so long as his opinions are based on sufficient facts.").  As discussed above, Dr. Steingart based his conclusions on sufficient data.

Safeway also argues that Dr. Steingart's opinions are unreliable because he relied on Dr. Domer's and Dr. Feuer's summary of the medical records, rather than the records themselves.  (*See* Doc. 32 at 6, 8; Doc. 35 at 5.)  An expert witness can "review . . . experimental, statistical, or other scientific data generated by others in the field" in demonstrating that their opinion "adhere[s] to the same standards of intellectual rigor that are demanded in their professional work" and are thus reliable.  *Cummins v. Lyle Indus.*, 93 F.3d 362, 369 (7th Cir. 1996).  It was thus not *per se* improper for Dr. Steingart to consider Dr. Domer's and Dr. Feuer's summaries, especially with regard to Dr. Domer because Dr. Steingart testified that he has known Dr. Domer for years and that Dr. Domer prepares honest opinions.  (Doc. 32-1 at 15.)  *See Elosu*, 26 F.4th at 1026 (noting that experts are "permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation"); *see also Roubert v. Amazon*, 2025 WL 607060, at *2–4 (E.D. Pa. 2025) (denying motion to exclude defense expert's testimony where expert relied on report prepared by former defense expert, reasoning that because the later-retained expert was "permitted to rely on statements made by other physicians, his testimony rest[ed] on 'good grounds'"); *Nicholson v. Biomet, Inc.*, 2020 WL 3399899, at *6 (N.D. Iowa 2020) ("An expert can rely on the reports and testimony of another in

forming the expert's own opinions.  There is no rule that experts may not rely on the opinions of other experts." (citation modified)); *Ford v. Wildey*, 2016 WL 310103, at *2 (E.D. Cal. 2016) ("A medical expert may base his opinion on the medical opinions and information contained in the reports of other doctors.").

Finally, although Safeway takes issue with Dr. Steingart's reliance on Gorney's self-reported medical history, (*see* Doc. 35 at 5), this is not a proper basis to exclude Dr. Steingart's opinions.  In *Elosu*, the Ninth Circuit held that a district court abused its discretion by excluding the plaintiffs' expert opinion on grounds that the opinion relied on one of the plaintiff's "interested testimony," reasoning that this "exceeded the scope of the Rule 702 inquiry" and was a "countervailing concern[]" that went to weight and credibility, not admissibility.  *See* 26 F.4th at 1027–28.  Dr. Steingart was thus permitted to rely on Gorney's oral medical history in forming his opinions.  *See id.*; *see also Cooper v. Carl A. Nelson & Co.*, 211 F.3d 1008, 1020 (7th Cir. 2000) ("[I]n clinical medicine, the methodology of physical examination and self-reported medical history . . . is generally appropriate."); *Penzova v. Moya*, 2024 WL 4349309, at *3 (D. Nev. 2024) ("[A] doctor's failure to verify a patient's self-reported medical history does not necessarily make the doctor's causation opinion unreliable because there is more than one reliable method of determining an injury's cause and not every reliable method may require a comprehensive, independent review of a patient's medical history.").[2]

Dr. Steingart's opinions are thus not excluded on this ground.  Safeway may raise these challenges to Dr. Steingart's opinions in cross-examination at trial.

### 2.    Qualification to Opine on Venous Issues and Wound Care

Safeway's challenge to Dr. Steingart's qualifications on venous issues and wound care is likewise denied.  Dr. Steingart is qualified to offer opinions on areas that touch on venous issues and wound care due to his knowledge and experience, and he did not go beyond his knowledge and experience in responding to Dr. Feuer's report.

---

[2]    At oral argument, Safeway argued for the first time that Dr. Steingart's failure to review all of the relevant medical records violates the best evidence rule.  This argument is not considered because it was not raised in the parties' briefing.  *See Rice Corp. v. Grain Bd. of Iraq*, 582 F. Supp. 2d 1309, 1313 (E.D. Cal. 2008).

"Ordinarily, courts impose no requirement that an expert be a specialist in a given field, although there may be a requirement that he or she be of a certain profession, such as a doctor." *Doe v. Cutter Biological, Inc.*, 971 F.2d 375, 385 (9th Cir. 1992). Although Safeway is correct that a medical doctor's qualification to opine in one area "does not mean he is qualified to testify on all other medical topics," *see Montera v. Premier Nutrition Corp.*, 2022 WL 1225031, at *9 (N.D. Cal. 2022), Dr. Steingart does not venture into territories in which he has no specialized knowledge or experience. Dr. Steingart has extensive experience in wound care because, for part of his career, wound management specialists did not exist, so orthopedic surgeons treated such injuries. (*See* Doc. 32-1 at 75.) That Dr. Steingart does not primarily or exclusively practice in wound care does not mean he cannot opine on it based on his years of experience. *See Thomsen v. NaphCare*, 2023 WL 8701971, at *11 (D. Or. 2023) (declining to exclude cardiologist from opining on whether the plaintiff was "suffering from or died due to alcohol withdrawal" because the cardiologist had "diagnosed and examined patients with both alcohol withdrawal and delirium tremens"); *Finkelstein v. Prudential Fin. Inc.*, 2023 WL 6970280, at *4 (D. Ariz. 2023) (denying motion to exclude neurologist's opinions about a disease, reasoning that the neurologist had "treated hundreds of patients with" that disease and could "care for and treat patients with" the disease).

As for Dr. Steingart's opinions that touch on venous issues, Dr. Steingart is sufficiently qualified to opine on the effect of Gorney's fall on his body from an orthopedic surgeon's perspective, even if that includes the fall's effect on Gorney's vascular system at large. An orthopedic surgeon specializes in "injuries and diseases of the musculoskeletal system," including "the bones, joints, tendons, ligaments, and muscles." *Orthopedic Surgeon*, Nat'l Cancer Inst., https://www.cancer.gov/publications/dictionaries/cancer-terms/def/orthopedic-surgeon [https://perma.cc/QUN3-LKG5] (last accessed Sept. 4, 2025). Dr. Steingart indicated in his rebuttal to Dr. Domer's report that orthopedic surgeons must be knowledgeable and cognizant of the effect of trauma on the body, such as the effect of inflammation on "soft tissue [and] blood vessels," and are authorized to

prescribe blood thinners after surgery to combat such inflammation.  (Doc. 32-1 at 75; *see also id.* at 76 ("I wrote an article about trauma and swelling in 1992.").)  Thus, he states, "[b]lunt trauma due to a fall can cause bruising, muscular injury, and blood vessel 'stickiness' through a complex chain of complement mediated pathway[s] that occur with inflammation."  (*Id.* at 75.)  The effects of a fall on the musculoskeletal system are sufficiently related to the vascular system at large that they are within Dr. Steingart's purview.

It is worth noting that Dr. Domer's opinions touch on venous issues as well.  (*See* Doc. 32-1 at 51 ("It is possible that he had an increase in swelling in that leg secondary to strain/sprain or contusion but in my opinion there is no evidence to support any change to his vascular status, at least as I read the documentation."); *id.* ("Venous insufficiency is a condition that causes ulcerations as well as swelling of the lower extremity, and there is no indication in any of the medical records reviewed that there was any change documented in the condition of the lower extremity to include swelling, as discussed by Mr. Gorney on the date of the IME.").)  Although Dr. Domer states that "evaluation by a vascular surgeon . . . would be more appropriate," the fact that Dr. Domer commended on venous issues at all suggests that this topic is not out of the realm of an orthopedic surgeon's knowledge and experience.  (*See id.* at 52.)

Moreover, Dr. Steingart has knowledge and experience about treating some vascular issues.  (*Id.* at 87 ("I have treated vascular ulcers and skin contaminated wounds, deep and superficial venous thrombosis, amputations, and limb swelling in my 40-year career.").)  But even if that experience were not considered, Dr. Steingart stays within his lane in responding to Dr. Feuer's report.  Dr. Steingart opined that the fall caused "immediate ballooning of the limb and a formation of an open wound"; "bodily damage" such as "bacterial skin contamination," "a contusion or bruise," and damage to the "spine and extremities"; and "inflammation of arterial and venous vessels," which can cause blood clots.  (*Id.* at 88–89.)  These conclusions are consistent with the knowledge and experience of a doctor who specializes in injuries to the musculoskeletal system and has experience in

wound treatment.  (*See id.* at 18 ("I said that very clearly in my rebuttal that the fall had an aggravation of not only the back, but the leg itself and the muscle, you know, when you fall you hurt your muscles and you bleed.").)  Dr. Steingart need not have the same specialty as Dr. Feuer to rebut opinions that pertain to areas in which Dr. Steingart has knowledge and experience.  *See Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100–01 (8th Cir. 2006) ("Rule 702 does not require a[n] [opposing] medical expert to be of the identical medical specialty . . . .  Rule 702 [just] require[s] that the area of the witness's competence matches the subject matter of the witness's testimony." (quotation marks omitted)).

In any event, Dr. Steingart denied in his deposition that he will testify about the progression or treatment of any blood clots.  (*See* Doc. 32-1 at 25–27.)  Dr. Steingart thus appears to retreat from the statement in his initial report that Gorney's "vascular status had changed from this fall and in all medical probability caused progression of his clot or for the need of treatment."  (*Id.* at 34.)  Rather, Dr. Steingart stated that he intends to opine that the trauma from Gorney's fall resulted in swelling and a reopening of a skin wound.  (*See id.* at 25 ("I can say that the opinion I feel the wound is opened is not necessarily solely from the venous issue, but also has to do with the leg itself, the pre-injury status, as well as the dirty floor and it was a weakened area.  So that's how infections creep in."); *id.* at 27 ("Q. So your opinions are going to be more towards the wound?  A. That's correct, yeah."); *id.* at 76 ("In Mr. Gorney's case, one cannot ignore the open wound and swelling from the fall.  The fall caused Mr. Gorney's skin wound. . . .  Immediately after the fall the leg swelled, causing an ulceration of the leg which in my opinion is directly related to the trauma of the fall.").)  Again, such an opinion is within Dr. Steingart's knowledge and experience.

Additionally, considering how intricately connected the human body's systems are, it is not surprising that Dr. Steingart has knowledge about other parts of the body, including the vascular system, that are affected by or which themselves affect injuries to the systems in which he specializes.  *See, e.g.*, *Dent v. West Virginia*, 129 U.S. 114, 122 (1889) (stating

that the medical profession requires knowledge "of the human body in all its complicated parts, and their relation to each other"). Accordingly, he is qualified to opine on such matters. *See Al-Turki v. Robinson*, 2013 WL 603109, at *2 (D. Colo. 2013) (rejecting argument that "a licensed physician may not offer an expert opinion regarding any medical condition for which there exists a specialty" and reasoning that, although the expert would "not be permitted to offer an expert opinion at trial regarding a specific medical issue without offering a basis for that opinion," the court would not "rule that a medical doctor may not testify about a medical question falling into his general purview").

Safeway's motion is therefore denied. This denial is without prejudice to Safeway objecting to Dr. Steingart's testimony if he veers into subjects in which he has no experience or expertise, or if new information comes to light that would materially impact the analysis in this order. *See City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017) (noting that a trial court may "change its ruling at trial because testimony may bring facts to the . . . court's attention that it did not anticipate at the time of its initial ruling" (citation omitted)). To be clear, this is not an invitation for Safeway to make the same arguments for exclusion already rejected in this order, absent "facts or circumstances [that] arise to warrant a reversal." *Id.* (citation omitted). But it preserves Safeway's ability to object to any opinion for which Dr. Steingart does not "offer[] a basis." *See Al-Turki*, 2013 WL 603109, at *2. And again, nothing in this order prevents Safeway from impeaching or cross-examining Dr. Steingart at trial based on any weaknesses it believes are present in his opinions, including the arguments Safeway made in its motion. *See, e.g.*, *id.* ("The Court's decision will not preclude Defendant from cross-examining [the expert] at trial regarding the strength of his credentials and his experience . . . , in order to sway the jury regarding the weight to be accorded his testimony.").

In light of these conclusions, Gorney's alternative request for a continuance and limited discovery, (Doc. 52 at 5), is denied as moot.

Accordingly,

///

1      **IT IS ORDERED** that Safeway's motion to exclude Dr. Steingart's opinions (Doc.

2  32) is **denied**.

3      Dated this 8th day of September, 2025.

Honorable Sharad H. Desai
United States District Judge